**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MURPHY MEDICAL ASSOCIATES, LLC, *et al.*, | ) | CASE NO. 3:22-cv-33 (KAD) |
|     *Plaintiffs*, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| YALE UNIVERSITY, *et al.*, | ) | March 24, 2023 |
|     *Defendants*. | ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION TO DISMISS (ECF NO. 16)**

Kari A. Dooley, United States District Judge:

    This case arises out of the alleged failure by Yale University and the Yale Health Plan ("Yale" or "Defendants") to reimburse Plaintiffs for conducting COVID-19 tests. Plaintiffs Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, and Steven A.R. Murphy ("Murphy Medical" or "Plaintiffs") allege violations of the Families First Coronavirus Response Act ("FFCRA") and Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), the Employee Retirement Income Security Act of 1974 ("ERISA"), the Connecticut Unfair Insurance Practices Act ("CUIPA") through the Connecticut Unfair Trade Practices Act ("CUTPA") ("CUTPA/CUIPA"), and assert common law claims of unjust enrichment and breach of contract. Defendants move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) on a variety of bases. Plaintiffs oppose the motion to dismiss but seek leave to replead if the Court determines that the allegations are inadequate to state their claims. Pl. Mem. in Opp. at 48. For the reasons that follow, the motion to dismiss is GRANTED. However, the dismissal is without prejudice as to one claim and Plaintiffs are permitted to file an Amended Complaint as detailed below.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations and internal quotation marks omitted).

**Factual Allegations**

In the face of a global pandemic, Congress passed two statutes to make COVID-19 tests readily available. Compl. ¶ 23. The FFCRA and the CARES Act generally require health plans to cover and reimburse providers for COVID-19 testing and related services—and important here—

to do without cost sharing, deductibles, copayments, coinsurance, and other medical management requirements. Compl. ¶¶ 23–24.

Murphy Medical was one provider that began operating COVID-19 testing sites throughout Connecticut and New York in March 2020. Compl. ¶ 29. Murphy Medical took patient samples by nasal swabs and sent those samples to their lab or a third-party lab for processing. Compl. ¶ 34. All swabs of Yale members or beneficiaries were processed by Murphy Medical's internal laboratory. Compl. ¶ 51.

Thereafter, Murphy Medical purchased a Biofire Film Array System which could test for COVID-19 and "other respiratory viruses and infections that could possibly cause the same or similar symptoms as COVID-19." Compl. ¶¶ 37, 40. Murphy Medical used the Biofire Film Array System in its internal lab to analyze samples and produce results faster than third party labs. Compl. ¶ 43. Murphy Medical also conducted medical histories and basic examinations on patients who sought COVID-19 tests and offered telemedicine services. Compl. ¶ 44.

Murphy Medical generally obtained assignment of benefit forms from patients who received testing at their sites, or if the patients registered online, Murphy Medical obtained the forms electronically. Compl. ¶ 47. Yale has refused to reimburse Murphy Medical for any testing or related services that they performed on Yale's members and beneficiaries, totaling over 1,500 claims and $1,100,784.00. Compl. ¶¶ 53–54. Yale either ignored or failed to engage in a "meaningful dialogue" with Murphy Medical when prompted by counsel for an explanation and, instead, continued to deny the claims submitted by Murphy Medical. Compl. ¶¶ 55–56. Murphy Medical has attempted to appeal every claim that Yale denied, but those attempts have been summarily denied without any investigation into the claims. Compl. ¶¶ 57, 59.

**Discussion**

**Federal Claims**

*Count One: FFCRA and CARES Act*

Murphy Medical alleges that Yale violated the FFCRA and CARES Act by failing to reimburse Murphy Medical for COVID-19 testing and related services it performed for Yale members and beneficiaries because a "health plan is obligated to pay the provider its cash price for providing those services" if the parties have not otherwise negotiated a rate. Compl. ¶¶ 72–73, 75. Yale seeks dismissal of this claim insofar as the FFCRA and CARES Act do not provide a private cause of action for healthcare providers. In response, Murphy Medical argues that the Court should find an implied private cause of action in this legislation. The Court does not write on a blank slate. A number of district courts, including two in this district, have examined this issue and rejected the invitation to read a private cause of action into the FFCRA and CARES Act. The Court agrees with these courts, and particularly, the well-reasoned decisions of Judge Arterton and Judge Bryant (which involve substantially the same plaintiffs as those in this case).

Generally, "private rights of action to enforce federal laws must be created by Congress." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). Such a private right of action may be provided for expressly in legislation, "or, more rarely, by implication." *Id.* To determine whether an implied private right of action exists, courts consider "the text of structure of the statute." *Id.* The Court must determine whether Congress intended to imply "not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 288 n.7. In *Cort v. Ash,* the Supreme Court set forth factors for courts to examine in making this inquiry:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply

such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78 (1975).

As examined by numerous courts, the language of § 6001 of the FFCRA and § 3202 of the CARES Act and of the *Cort* factors reveal no intent on the part of Congress to afford health care providers a privately enforceable remedy for the failure to pay claims for COVID-19 testing and related services. *See, e.g.*, *Murphy Medical Associates, LLC v. Cigna Health and Life Ins. Co.*, No. 3:20-cv-1675 (JBA), 2022 WL 743088, at *2–*6 (D. Conn. Mar. 11, 2022) ("[N]either § 6001 of the FFCRA nor § 3202 of the CARES Act contains a private right of action."); *Murphy Medical Associates, LLC, et al. v. Centene Corp., et al.*, No. 3:22-cv-504 (VLB), 2023 WL 2384143, at *6–*7 (D. Conn. Mar. 6, 2023) (same); *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, No. 22-cv-1696 (JSC) *et al.*, at *2–*4 (N.D. Cal. June 23, 2022) (same); *Horvath v. JP Morgan Chase & Co.*, No. 3:21-cv-1665 (BTM), 2022 WL 80474, at *5 (S.D. Cal. Jan 7, 2022) (same); *Betancourt v. Total Prop. Mgmt.*, No. 1:22-cv-33 (JTL), 2022 WL 2359286, at *3 (E.D. Cal. June 30, 2022) (same); *GS Labs, Inc. v. Medica Ins. Co.*, No. 21-cv-2400 (SRN), 2022 WL 4357542, at *10 (D. Minn. Sept. 20, 2022) (same); *Saloojas, Inc. v. Blue Shield of Cal. Life and Health Ins. Co.*, No. 22-cv-3267 (MMC), 2022 WL 4843071, *1 (N.D. Cal. Oct. 3, 2022) (same); *America Video Duplicating, Inc. v. City Nat'l Bank*, No. 2:20-cv-4036 (JFW), 2020 WL 6882735, at *4–5 (C.D. Cal. Nov. 20, 2020) (same). The only decision the Court is aware of where a district court did find an implied private right of action, *Diagnostic Affiliates of Northeast Hou, LLC v. United Healthcare Services, Inc.*, No. 2:21-cv-131 (NGR), 2022 WL 214101 (S.D. Tex. Jan. 18, 2022), has since been disavowed by the same court that issued it. *Diagnostic Affiliates of Northeast Hou, LLC v. Aetna, Inc.*, No. 2:22-cv-127 (NGR), 2023 WL 1772197, at *9 (S.D. Tex. Feb. 1, 2023) ("This Court thus

disavows its decision in *United* insofar as it allowed the FFCRA/CARES Act claim to survive a Rule 12(b)(6) challenge and, joining its sister courts, HOLDS that the FFCRA/CARES Act does not carry with it an implied private cause of action to enforce its terms."). This Court agrees with both the reasoning and conclusions of these cases.[1] The motion to dismiss as to Count One is GRANTED and the claim is dismissed **with prejudice**.

    *Count Two: ACA*

Yale next asserts that dismissal of Count Two is appropriate because the ACA does not provide a private cause of action. Murphy Medical conceded at oral argument that this claim should be dismissed. The motion to dismiss as to Count Two is GRANTED and the claim is dismissed **with prejudice**.

    *Count Three: ERISA*

Yale next challenges the ability of Murphy Medical to assert claims based on their patients' right under their benefit plans and ERISA. Yale argues that Murphy Medical lacks standing to bring an ERISA claim because they failed to allege that any beneficiary assigned their ERISA rights to Murphy Medical, and even if they have standing to bring an ERISA claim because a beneficiary validly assigned their rights, they failed to exhaust their administrative remedies under ERISA. The Court addresses each argument in turn.

    **Standing**

---

[1] The Court also agrees with Judge Bryant that two congressional letters drafted after the enactment of the FCCRA and CARES Act, cited to and relied upon by Plaintiffs in this case, do not support the conclusion that Congress intended to create a private right of action for providers seeking reimbursement for COVID-19 testing. *See Murphy Medical Associates, LLC*, 2023 WL 2384143, at *7 ("Nowhere in this letter does it express any implied intent by Congress to create a private right of action for those providers. Rather, the letter appears to suggest the contrary is true, because it is directed to the Department heads and 'urges [them] to take immediate action.' . . . If these members of Congress believed that health care providers had a private cause of action, there is no reason for them to ask the Department heads to take action to enforce the rights of providers.").

Pursuant to § 502 of ERISA, a plan participant or beneficiary may bring a civil enforcement action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001) (per curiam). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(2)(B)(8). "A beneficiary is best understood as an individual who enjoys rights equal to the participants to receive coverage from the healthcare plan." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015). The "right to payment" for covered services, however, "does not a beneficiary make." *Id.* at 258 (holding that healthcare providers are not beneficiaries under ERISA).

Generally, only the parties enumerated in § 502 may sue for relief under ERISA. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983). A "narrow exception" to this rule exists for "healthcare providers to whom a [participant or] beneficiary has assigned his claim in exchange for health care." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329 (2d Cir. 2011); *see also Simon*, 263 F.3d at 178; *I.V. Serv. of Am. Inc. v. Trustees of the Am. Consulting Eng'r Council*, 136 F.3d 114, 117 n.2 (2d Cir. 1998). To assert an ERISA claim, therefore, a provider must establish that it has a valid assignment of the rights asserted in the complaint that comports with the terms of the benefit plans at issue. *See, e.g.*, *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) (holding that assignment to out-of-network provider was "a legal nullity" in light of anti-assignment provision in plan); *see also Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d. 698, 700 (7th Cir. 1991) ("Because ERISA instructs courts to enforce strictly the terms of

plans, an assignee cannot collect unless he establishes that the assignment comports with the plan." (citation omitted)); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) ("we are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision").

"Assuming a plan does not dictate the form of a valid assignment or bar assignment altogether, a court may draw upon federal common law in assessing whether any purported assignment was effective." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (citing *I.V. Servs. of Am. Inc.*, 136 F.3d at 117 n.2). Here, as discussed *infra*, the Court has no way of knowing the extent to which the multitude of plans implicated in the complaint dictate the form of assignments or bar assignments altogether.

"An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) Contracts § 317 (1981). "No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient. . . ." 29 S. Williston, Contracts § 74:3 (4th Ed.); *accord Sunset Gold Realty, LLC v. Premier Bldg. & Dev., Inc.*, 133 Conn. App. 445, 452–53 (2012); *see also DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876 (9th Cir. 2017) ("These forms do not use the terms 'assign' or 'assignment,' but no such specific language is necessary to effectuate an assignment of rights."). Valid assignments may take a variety of forms; Restatement (Second) of Contracts § 324; *see Montefiore Med. Ctr.*, 642 F.3d at 329 n.8; unless a statute or contract provides otherwise;

Restatement (Second) of Contracts § 324; *see McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 147 (looking to terms of benefit plan to determine whether assignment was valid).

Some courts have held that assignments of rights under ERISA must be express and, therefore, concluded that forms authorizing or directing an insurance company to pay benefits directly to a provider do not constitute valid assignments under ERISA. *E.g.*, *AvuTox, LLC v. Cigna Health & Life Ins. Co.*, No. 5:17-cv-00250 (BO), 2017 WL 6062257, at *3 (E.D.N.C. Dec. 7, 2017) ("In order for an assignment under ERISA to be valid, it must be express."); *see Peterson v. UnitedHealth Grp.*, No. 14-cv-02101 (PJS) (BRT), ECF No. 60 at 37–39 (D. Minn. Jan. 23, 2015) (oral ruling rejecting plaintiff's that argument direction of payment form constituted assignment of benefits). On the other hand, numerous other courts have concluded that language authorizing an insurance company to pay a provider directly constitutes an assignment of the right to payment and the corollary right to sue under ERISA for nonpayment. *E.g.*, *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 547 (6th Cir. 2016); *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 Fed. Appx. 169, 174–75 (3d Cir. 2015); *Dialysis Newco Inc. v. Cmty. Health Sys. Tr. Health Plan*, No. 5:15-cv-00272, 2017 WL 2591806, at *4 (S.D. Tex. June 14, 2017); *Dallas Cty. Hosp. Dist. v. Blue Cross Blue Shield of Tex.*, No. 3:05-cv-0582-BF(M), 2006 WL 680473, at *4 (N.D. Tex. Mar. 14, 2006).

Under either approach, Murphy Medical has not plausibly alleged standing under ERISA. In a wholly conclusory fashion, Plaintiffs allege that they "generally receive[] assignment of benefit forms from patients who receive testing services at the Murphy Practice testing sites" as well as patients who registered online, Compl. ¶ 47, and upon "information and belief, the Yale health plans do not prohibit patients from assigning their rights to benefits under the plans to the Murphy Practice, including direct payment of benefits under the plans to the Murphy Practice."

Compl. ¶ 91. Murphy Medical does not include *any* language from these purported assignments or any details regarding *any* ERISA plans under which they seek payment. Moreover, Murphy Medical seeks to bring individual ERISA claims on behalf of over 1,500 plan beneficiaries pursuant to numerous different benefit plans[2] but fails to identify with sufficient particularity the assignor-beneficiaries whose claims it is asserting, the participants through whom the beneficiaries have benefits, or the identity of the plans under which such benefits are allegedly conferred. The mere fact that Murphy Medical *may* be an assignee of numerous claims under benefit plans covered by ERISA does not give them the unfettered ability to challenge Yale's benefits payments, wholly untethered from the patients in whose shoes Murphy Medical purports to stand and the plans which convey the rights Plaintiffs seek to enforce.

The "principal function" of the pleading requirements embodied in Rule 8 of the Federal Rules of Civil Procedure "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint does not comply with Rule 8's requirements, "the court has the power, on its own initiative . . . to dismiss the complaint." *Id.* "The key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). "[F]air notice [is] that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Id.* (internal quotation marks omitted). Rule 8 requires a plaintiff to "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v.*

---

[2] Indeed, Murphy Medical has acknowledged that not all patients were even enrolled in ERISA plans. *See* Compl. ¶ 90; Pl. Mem. at 33. As explained below, to the extent that there are claims that arise from non-ERISA plans, Murphy Medical would have no right to reimbursement under ERISA and any cause of action under state law would be preempted by ERISA for reimbursement of these claims.

*Kornstein*, 230 F. 3d 531, 541 (2d Cir. 2000) (emphasis added) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). For these reasons, dismissal can be appropriate when a complaint is so "confusing as to 'overwhelm the defendants' ability to understand or to mount a defense.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (quoting *Wynder*, 360 F.3d at 80).

  Here, the Court concludes that the complaint does not meet the pleading requirements of Rule 8. Without knowing whose rights Murphy Medical purports to assert, or the plans under which those rights allegedly derive, Yale does not have fair notice as to the claims asserted and cannot defend the claims in a meaningful or orderly manner. By way of example, the terms of the individual plans might identify available defenses, such as the existence of anti-assignment provisions which might defeat Murphy Medical's ability to bring ERISA claims in the first instance. *See, e.g.*, *McCulloch Orthopaedic Surgical Servs., PCCL*, 857 F.3d at 147 (determining whether assignments were effective based on the terms of the plans); *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 121–123 (S.D.N.Y. 2016) (looking to plan terms to determine whether anti-assignment provisions invalidated provider's assignments and whether provider had viable equitable defenses to anti-assignment provisions). Further, identifying the various plans is necessary to assess the whether the claim denials were improper. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue"); *Karl v. Asarco, Inc. &/or its Pension Bd.*, No. 93-cv-03819 (KTD), 1998 WL 107113, at *6 (S.D.N.Y. Mar. 11, 1998) ("Under ERISA, every employee benefit plan must be contained in a written instrument which governs the obligations and entitlements under that plan."), *aff'd sub nom. Karl v. Asarco Inc.*,

166 F.3d 1200 (2d Cir. 1998). Plaintiffs have failed to plausibly or adequately allege standing to bring ERISA claims.

### Administrative Exhaustion

Even if Murphy Medical would be able to plausibly allege that they have valid assignments to pursue some of the ERISA claims, they have failed to show that they exhausted their administrative remedies under ERISA before bringing these claims.

While ERISA does not contain an administrative exhaustion requirement, "the federal courts—including this Circuit—have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). A plaintiff must pursue "those administrative [processes] provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594. While the failure to exhaust administrative remedies is an affirmative defense and does not deprive a court of subject matter jurisdiction, *Paese*, 449 F.3d at 446, courts have nevertheless dismissed claims where plaintiffs fail to plead, or plead only in conclusory fashion, that they have exhausted their administrative remedies, *see Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 608–09 (S.D.N.Y. 2009) (collecting cases and concluding that the allegation that "all conditions precedent including the exhaustion of administrative remedies to maintaining this action have been performed or have occurred or are futile" was insufficient to withstand a motion to dismiss).

Notwithstanding, a plaintiff can overcome the administrative exhaustion requirement through a "clear and positive showing that seeking review by [the defendant] would be futile." *Id*. at 609. The purpose of the exhaustion requirement is to "help reduce the number of frivolous

lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Kennedy*, 989 F.2d at 594 (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). Accordingly, if a plaintiff's participation in a formal administrative process would be futile, these purposes are "no longer served," and "a court will release the claimant from the requirement." *Id.* The futility exception "is not applied lightly." *Neurological Surgery, P.C.* v. *Northrop Grumman Sys. Corp.*, No. 2:15-cv-4191 (DRH), 2017 WL 389098, at *6 (D. Conn. Jan. 26, 2017) (emphasis removed) (quoting *Zupa v. Gen. Elec. Co.*, No. 3:16-cv-217 (CSH), 2016 WL 3976544, at *2 (D. Conn. July 22, 2016)); *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, 2011 WL 1213218, at *6 (S.D.N.Y. Mar. 29, 2011) ("The standard for demonstrating futility is very high, and Plaintiffs seeking to make such a showing face a heavy burden" (internal quotation marks and citations omitted)).

Here, the nature of the administrative exhaustion requirements are unclear because the Plaintiffs have not pled and the parties have not detailed the relevant plans' exhaustion requirements. The complaint does not allege what administrative procedures are required nor whether Murphy Medical followed these procedures.[3] Rather, Plaintiffs summarily assert that they "appealed every claim submitted to Yale" and therefore "any available administrative remedies are deemed exhausted." Compl. ¶¶ 4, 114. These allegations are insufficient to withstand a motion to dismiss. *Kesselman*, 668 F. Supp. 2d at 609 ("It is well established that ERISA complaints containing bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6) motion.") (citing cases).

---

[3] This information is also necessary to determine the nature and scope of the Court's review of the Defendants' final decision at the end of the process.

The motion to dismiss as to Count Three is GRANTED. The dismissal is **without prejudice** to allow Murphy Medical to file an Amended Complaint to address the deficiencies identified herein with respect to the ERISA claims. Any Amended Complaint must include allegations regarding the patients whose rights are being asserted, the alleged assignment of those rights, the specific plans under which Murphy Medical asserts claims, and whether Murphy Medical has exhausted their administrative remedies or whether such exhaustion would be futile.[4]

*Count Four: ERISA*

Defendants argue that Count Four is entirely duplicative of Count three and should be dismissed for that reason. Plaintiff again failed to brief this issue. As a result, Plaintiff may be deemed to have abandoned this claim. *See Tracey v. Dept. of Social Servs.*, No. 3:17-cv-745 (KAD), 2019 WL 2526299, at *9 (D. Conn. June 19, 2019). Even if not abandoned, the Court agrees with Judge Arterton's reasoning that Murphy Medical's claims for declaratory and injunctive relief are adequately addressed under ERISA § 502(a)(1)(B). *See Murphy Medical Associates, LLC*, 2022 WL 743088, at *10 ("[W]here Congress elsewhere provided adequate relief

---

[4] At oral argument, Yale requested an order preventing Murphy Medical, if permitted to amend their pleadings, from putting statements made in the context of settlement discussions. Yale also noted in their opening brief that they would not address the allegation that they "either ignored or failed to engage in meaningful dialogue regarding the claims" with Murphy Medical because this allegation pertains to settlement discussions. Def. Mem. at 5 n.6; Compl. ¶ 56. Federal Rule of Civil Procedure 12(f) provides that "the Court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." If the evidence to be offered in support of the allegation would be inadmissible at trial, then the motion to strike that allegation should be granted. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). However, "courts should not tamper with the pleadings unless there is a strong reason for doing so." *Id.* at 893. Evidentiary questions "should especially be avoided at such a preliminary stage of the proceedings," because a determination of admissibility requires the context of an ongoing trial. *Id.* A motion to strike based on inadmissibility of evidence will fail "if there is any possibility that the pleading could form the basis for admissible evidence." *Eskofot A/S v. E.I. Du Pont de Nemours & Co.*, 872 F. Supp. 81, 94 (S.D.N.Y. 1995). If an Amended Complaint is filed, Defendants may seek whatever relief they believe appropriate. The Court does not attempt to cabin the types of allegations which may be included. As to the allegation already made, and objected to by Defendants, the Court is unable to determine, given the nascency of the case, and on this record, whether the allegations may only be supported through the improper use of settlement discussions. As such, Yale's request is denied without prejudice to raising the issue if there are grounds to do so upon the filing of an Amended Complaint.

for a beneficiary's injury, there will likely be no need for further equitable relief," *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996), and if the equitable relief a plaintiff seeks "falls comfortably within the scope of § 502(a)(1)(B), which allows a plan participant 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,'" then there is no need to "allow equitable relief under § 502(a)(3).") (citing *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (internal quotation marks omitted)). The motion to dismiss as to Count Four is GRANTED and the claim is dismissed **with prejudice**.

**State Law Claims**

*Count Five: Unjust Enrichment*

Yale argues that the claim of unjust enrichment should be dismissed because it is preempted by ERISA and that Murphy Medical has failed to plead facts sufficient to support the claim. Murphy Medical contends that they have adequately plead a claim for unjust enrichment but does not respond to the argument that ERISA preempts this claim.

The Second Circuit has recognized that the interaction between express preemption under ERISA § 514 and the common law presents "a more nuanced question than a literal reading of the text [of § 514] would imply." *Aesthetic & Reconstructive Breast Cntr., LLC*, 367 F. Supp. 3d at 7 (citing *Paneccasio*, 532 F.3d at 114). Under § 514 of ERISA, common law claims which "seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA'" are expressly preempted. *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)). How express preemption interacts with common law claims brought by third-party medical providers who do not have valid assignments of their patient's benefits remains open within the Second

15

Circuit. *Aesthetic & Reconstructive Breast Cntr., LLC*, 367 F. Supp. 3d at 8. At least one court in this district has concluded that while "there is some room for a third-party medical provider to assert state law claims against an insurer when it has not been validly assigned its patient's benefits," the claim still must not seek to "rectify a wrongful denial of benefits" under an ERISA plan. *Id.* at 9.

As to this claim, Murphy Medical alleges that Yale received funds from its members under their insurance plans, Yale members received COVID-19 tests from Murphy Medical sites, and Yale was obligated to pay for Murphy Medical's services. This claim is premised upon Yale's failure to pay for the services provided by ERISA plans and therefore necessarily relates to the "denial of benefits promised under ERISA-regulated plans," *Panecasio*, 532 F.3d at 114 and is preempted by ERISA.

To the extent that Murphy Medical alleges that some claims arise from non-ERISA plans, those claims also fail. Courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies[5] based on the services rendered to the insureds. *See, e.g, MC1 Healthcare, Inc. v. United Health Groups, Inc.*, No. 3:17-cv-1909 (KAD), 2019 WL 2015949, at *10–*11 (D. Conn. May 7, 2019) (collecting cases). Indeed,

> It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit.

*Travelers Indem. Co. of Conn.*, 150 F. Supp. 2d at 563. Murphy Medical's conclusory allegation that Yale derived some benefit because they received insurance premiums in exchange for out of network healthcare coverage, decreased the amount of long-term care as a result of early detection,

---

[5] Yale is not an "insurer" in the traditional sense. Rather, as a self-funded payer, Yale acts like an insurer in that it "pays the costs of health care services provided by healthcare providers to its members and/or beneficiaries out of its own funds." Compl. ¶¶ 15, 17.

and allowed members to return to Yale facilities does not persuade otherwise. The motion to dismiss Count Five is GRANTED and the claim is dismissed **with prejudice**.

*Count Six: Breach of Contract*

Murphy Medical also asserts a breach of contract claim, alleging that Yale refuses to make a payment on the balance it owes to them. Compl. ¶ 143. The alleged conduct concerns Yale's failure to provide benefits to Murphy Medical pursuant to the employee benefit plan. This argument presupposes a valid assignment of contract rights. Furthermore, the claim does not seek to rectify a violation of any legal duty independent of ERISA. Consequently, any claim for breach of contract is preempted by ERISA. *See Cole v. Travelers Ins. Co.*, 208 F. Supp. 2d 248, 260 (D. Conn. 2002) (finding plaintiffs' claims for breach of contract, unjust enrichment, and fraud are preempted by ERISA).

To the extent the claim is not preempted by ERISA because it arises from a non-ERISA plan, there is no contract between Murphy Medical and Yale alleged, and there are insufficient allegations that Murphy Medical was an intended beneficiary with respect to some unspecified contract between Yale and its members and beneficiaries.[6] The motion to dismiss Count Five as to Murphy Medical's breach of contract claim is GRANTED and the claim is dismissed **with prejudice**.

*Count Six (sic) and Seven: CUIPA/CUTPA*

The Court next addresses Yale's argument that the complaint fails to state a claim under CUIPA and CUTPA. Yale first argues that both claims fail as a matter of law because they are preempted by ERISA. To the extent that they are not preempted, Yale argues that there is no private

---

[6] The Court rejects the suggestion by Murphy Medical that the CARES Act provides a basis for the breach of contract claim. The legislation does not purport to establish contractual rights between insurers and medical providers. To accept this argument would be to provide an end run around the conclusion reached by this Court and many other district courts that there is no private right of action in the CARES Act.

cause of action provided by CUIPA, and Murphy Medical has failed to allege a predicate CUIPA violation for the CUTPA claim. Murphy Medical again conceded at oral argument that dismissal should enter for the CUIPA claim but nevertheless contend that they have sufficiently plead a claim based on CUTPA.

A CUTPA claim is preempted when it arises from the denial of benefits under an ERISA plan. *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (A CUTPA claim premised on the termination of an ERISA benefit plan that resulted in the denial of benefits under the plan was preempted); *see also Woods v. Unum Life Ins. Co. of Am.*, No. 3:09-cv-809 (SRU), 2011 WL 166205, at *3 (D. Conn. Jan. 19, 2011) (finding CUTPA and CUIPA claims preempted by ERISA where plaintiff alleged that his insurer "wrongly denied his application for long-term disability coverage"). Accordingly, the motion to dismiss may be properly granted on this basis.

To the extent that Murphy Medical has alleged that there are claims that arise from non-ERISA plans, the interplay between the CUTPA and CUIPA statutes is now well-settled. CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It further provides for a private right of action. Conn. Gen. Stat. § 42-110g(a). CUIPA, in turn, "prohibits unfair business practices in the insurance industry and defines what constitutes such practices in that industry," but it "does not authorize a private right of action." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 623 (2015). The Connecticut Supreme Court has determined, however, "that individuals may bring an action under CUTPA for violations of CUIPA." *Id.* "Because CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices, . . . unless an insurance related practice violates CUIPA or, arguably, some other statute regulating

a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA." *State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013); *accord Artie's Auto Body, Inc.*, 317 Conn. at 624 ("as a general rule, a plaintiff cannot bring a CUTPA claim alleging an unfair insurance practice unless the practice violates CUIPA"). As a result, "the failure of the CUIPA claim is fatal to the CUTPA claim." *Artie's Auto Body, Inc.*, 317 Conn. at 624.

The legislature has specifically defined what acts constitute unfair insurance practice, and thus, "a plaintiff must allege conduct that is proscribed by CUIPA." *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 625 (2006). The CUTPA claim contains no reference to CUIPA or any of the statutes' prohibitions. Because Murphy Medical has failed to allege a plausible CUIPA violation, the CUTPA claim necessarily fails. The motion to dismiss as to the CUTPA claim is GRANTED and the dismissal is **with prejudice**.

**Conclusion**

For the foregoing reasons, Yale's motion to dismiss (ECF No. 16) is GRANTED. The dismissal of Counts Three is without prejudice to the filing of an Amended Complaint as detailed above. The dismissal of Counts One (FFCRA and Cares Act), Two (ACA), Four (ERISA), Five (unjust enrichment), Six (breach of contract), Six (sic) (CUIPA), and Seven (CUTPA) are with prejudice. Plaintiffs may file an Amended Complaint on or before April 14, 2023. The failure to file an Amended Complaint will result in dismissal of this action with prejudice as to all claims without further notice.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of March 2023.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE