# United States Court of Appeals
# For the Second Circuit

October Term 2024

Submitted: October 29, 2024
Decided: November 4, 2024

No. 24-944

MURPHY MEDICAL ASSOCIATES, LLC, DIAGNOSTIC AND MEDICAL SPECIALISTS OF GREENWICH, LLC, and STEVEN A.R. MURPHY, M.D.,

*Plaintiffs-Appellants*,

*v.*

YALE UNIVERSITY and YALE HEALTH PLANS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Connecticut
No. 22-cv-00033, Kari A. Dooley, *Judge*.

Before:    KEARSE, SULLIVAN, and ROBINSON, *Circuit Judges*.

Plaintiffs, who are associated with a medical practice in Connecticut, appeal a judgment of the United States District Court for the District of Connecticut (Dooley, *J.*) dismissing their claims for reimbursement of the cost of COVID-19 tests provided to members of Yale Health Plans (together with Yale University, "Yale"), brought under the Families First Coronavirus Response Act (the "FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020), the Coronavirus Aid, Relief,

and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), the Affordable Care Act, 42 U.S.C. § 300gg-19a, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and for unjust enrichment, breach of contract, and violations of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816, and Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b.  On appeal, Plaintiffs argue that the district court erred when it concluded that (1) the FFCRA and CARES Act do not provide private causes of action for reimbursement; (2) Plaintiffs lacked standing to bring ERISA claims because they failed to allege that Yale Health Plan members had executed a valid assignment of benefits in their favor; (3) Plaintiffs failed to allege that they had exhausted their administrative remedies; and (4) Plaintiffs failed to state a claim for breach of contract.  Plaintiffs also contend that the district court abused its discretion when it denied Plaintiffs leave to amend their complaint.  We disagree with Plaintiffs as to each contention, and **AFFIRM** the judgment of the district court.

AFFIRMED.

> Roy W. Breitenbach, Harris Beach PLLC, Uniondale, NY, *for Plaintiffs-Appellants Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, and Steven A.R. Murphy, M.D.*
>
> Michael G. Durham, Matthew H. Geelan, Carmody Torrance Sandak & Hennessey LLP, Guilford, CT, *for Defendants-Appellees Yale University and Yale Health Plans*.

PER CURIAM:

Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, and Steven A.R. Murphy, M.D. (together, "Murphy") appeal a judgment of the United States District Court for the District of Connecticut

2

(Dooley, *J.*) dismissing their claims for reimbursement of the cost of COVID-19 tests provided to members of Yale Health Plans (together with Yale University, "Yale"), brought under the Families First Coronavirus Response Act (the "FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020), the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), the Affordable Care Act (the "ACA"), 42 U.S.C. § 300gg-19a, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and for unjust enrichment, breach of contract, and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-816, and the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42-110b.

On appeal, Murphy challenges the district court's judgment in four respects. First, Murphy argues the court erred when it found that it could not bring claims under the FFCRA and CARES Act on the ground that those statutes do not provide a private cause of action for reimbursement. Second, Murphy challenges the district court's conclusion that it lacked standing to bring its ERISA claims because it failed to allege that Yale Health Plan members had executed valid assignments of benefits in its favor. Third, Murphy argues the district court erred in concluding that it failed to exhaust its administrative remedies under the plan. Fourth,

3

Murphy asserts the court erred in finding that it failed to state a claim for breach of contract. And finally, Murphy argues that the district court abused its discretion when it denied Murphy leave to amend the complaint. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

I. BACKGROUND

A. Facts

At the outbreak of the COVID-19 pandemic in March 2020, Murphy was one of several healthcare providers that responded by setting up drive- and walk-through testing sites in Connecticut and New York. In addition to COVID-19 testing, Murphy provided diagnostic testing for other respiratory viruses and infections that may cause symptoms similar to COVID-19. Among those to whom Murphy provided diagnostic tests from the outbreak of the pandemic through December 2020 were members of Yale Health Plans – students, faculty, and individuals who otherwise receive healthcare through Yale University.

In March 2020, Congress responded to the public-health emergency by enacting the FFCRA and the CARES Act. In particular, section 6001(a) of the FFCRA mandated that group health plans provide their members with coverage, without imposing cost-sharing, for COVID-19 testing that was approved, cleared, or authorized by the federal Food and Drug Administration. *See* 134 Stat. at 201.

4

As relevant here, the CARES Act added the specific requirement that "[a] group health plan . . . providing coverage . . . described in section 6001(a) of [the FFCRA]" – such as Yale Health Plans – "shall reimburse the provider of the diagnostic testing" at either a "negotiated rate" or "in an amount that equals the cash price for such service as listed by the provider on a public internet website." § 3202, 134 Stat. at 367.

After providing diagnostic testing to members of Yale Health Plans through 2020, Murphy submitted claims for reimbursement of COVID-19 testing to the Plans. In September 2021, Yale Health Plans informed Murphy that it would not pay its claims.

B.   **Procedural History**

Murphy commenced this action in January 2022, alleging federal claims under the FFCRA, the CARES Act, the ACA, and ERISA, and state-law claims for unjust enrichment, breach of contract, and violations of CUIPA and CUPTA. In all, Murphy seeks $1,100,784.00 for the approximately 1,500 claims for reimbursement of COVID-19 testing that Yale Health Plans denied.

Yale moved to dismiss the original complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which the district court granted with prejudice as to all but the ERISA claims. Beginning with

5

Murphy's federal claims, the district court held that Congress did not intend to create a private cause for action for providers of COVID-19 testing under the FFCRA and CARES Act, and that Murphy therefore failed to state a claim under these federal statutes. The district court also concluded that Murphy lacked standing to pursue its ERISA claims because its allegation that it "generally receive[s] assignment of benefit forms from patients," J. App'x at 120, failed to establish that it obtained a valid assignment from the relevant members, and in the alternative, the court concluded that Murphy did not plausibly allege that it exhausted administrative remedies before bringing its claims in federal court. The district court did, however, grant Murphy leave to replead its ERISA claims to show the valid assignment of benefits and its exhaustion of administrative remedies. Finally, Murphy conceded that its ACA claim should be dismissed because the ACA does not provide a private cause of action.

As to Murphy's state-law claims, the district court concluded that Murphy failed to allege that Yale Health Plan members executed valid assignments of benefits in its favor and therefore was unable to bring a breach-of-contract claim against Yale. The district court further determined that Murphy failed to state an unjust enrichment claim because it did not allege that Yale itself derived a benefit

6

from the COVID-19 tests Murphy provided, and that Murphy failed to plead a CUTPA claim because it did not allege a specific unfair insurance act by Yale. Murphy conceded the dismissal of its remaining CUIPA claim, and all state law claims were dismissed with prejudice. The district court also noted that any state-law claim would be preempted if it was brought with respect to an ERISA-governed plan, as opposed to any non-ERISA plan Yale may offer.[1]

After Murphy filed its amended complaint, the district court again dismissed Murphy's ERISA claims, this time with prejudice. The court concluded that Murphy simply repeated conclusory allegations regarding the assignment of benefits without identifying which members made such assignments and whether they overcame the anti-assignment provision in Yale's general policy. The court also determined that the amended complaint failed to adequately allege exhaustion of administrative remedies, since it did not identify the plan language detailing the required administrative procedures or whether Murphy followed

---

[1] Although the district court did not justify its exercise of supplemental jurisdiction over Murphy's pendent state-law claims after dismissing its federal claims, "the parties do not dispute that all of the [state] claims asserted . . . involve the [defendant]'s alleged failure to reimburse [the plaintiff] for medical services provided to Plan beneficiaries" and therefore "are so related to [the federal] claims" under 28 U.S.C. § 1367(a) that the court's exercise of supplemental jurisdiction was appropriate. *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (internal quotation marks omitted).

7

those procedures. The district court did not specifically address the request in Murphy's opposition papers for leave to amend should it grant Yale's second motion to dismiss, but there is no dispute that the court's dismissal with prejudice operated as an effective denial.

This appeal followed.

## II. DISCUSSION

We review *de novo* whether a plaintiff lacks a cause of action under an applicable statute and whether a plaintiff has plausibly alleged a breach-of-contract claim. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357–59 (2d Cir. 2016); *Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 515 F.3d 93, 98 (2d Cir. 2008). We review the district court's denial of leave to amend for abuse of discretion. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005).

### A. The FFCRA and CARES Act

Murphy concedes that neither the FFCRA nor the CARES Act contains an express cause of action for providers seeking reimbursement for COVID-19 tests. Nevertheless, Murphy argues that the statutes contain an *implied* cause of action. In determining whether a statute implies a cause of action, we consider whether "the text and structure of" the statute evince "congressional intent to create new

8

rights." *Alexander v. Sandoval*, 532 U.S. 275, 288–89 (2001). First, we consider whether the statute uses "'rights-creating' language," meaning language that "focus[es] on . . . the individuals protected" rather than "the person regulated." *Id.* Next, we consider whether the statute's methods of enforcement "manifest an intent to create a private remedy," as opposed to "empower[ing] agencies to enforce their regulations." *Id.* at 289. Generally, "[t]he express provision of one method of enforcing a substantive rule," such as through an agency proceeding, "suggests that Congress intended to preclude others," like a private cause of action. *Id.* at 290.

Here, the CARES Act's mandate that health plans "shall reimburse" providers of COVID-19 testing, accompanied by a description of the precise amount of reimbursement such providers are entitled to, reflects the type of rights-creating language that we have previously held may imply a cause of action. *See N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 79 (2d Cir. 2019) (finding an implied cause of action when the act in question "uses clearly mandatory language – 'shall' – [and] defines [statutory obligations] with particularity and in absolute terms"); *Briggs v. Bremby*, 792 F.3d 239, 242 (2d Cir. 2015) (finding an implied cause of action when "provisions use the mandatory 'shall'"). But when read together

9

with section 6001 of the FFCRA – the provision that section 3202 of the CARES Act supplements – it is clear that Congress intended for agency enforcement to be the exclusive remedy. Specifically, section 6001(b) of the FFCRA expressly provides that "[t]he provisions of subsection (a)" – which refer to the requirement that health plans provide coverage for COVID-19 testing – "shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans." 134 Stat. at 202. Therefore, taken together, the structure of the FFCRA and CARES Act shows that Congress contemplated agency enforcement and did not intend to create a private cause of action despite the rights-creating language in section 3202 of the CARES Act.

Reinforcing this conclusion is the fact that Congress *did* expressly provide a private cause of action for other violations of the FFCRA and CARES Act. Section 5105 of the FFCRA establishes that COVID-related denials of paid sick leave and unlawful terminations shall be considered violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, 215(a)(3), 216(b), provisions that allows for private enforcement. *See* FFCRA § 5105, 134 Stat at 197. We have previously explained that "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of any explicit private right to enforce

10

other sections was intentional." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (internal quotation marks omitted). We therefore conclude that the express provision of a private cause of action in section 5105 of the FFCRA further evinces a lack of congressional intent to provide a cause of action for providers of COVID-19 testing under section 3202 of the CARES Act. Indeed, the only reference to enforcement in section 3202 is that the Secretary of Health and Human Services shall impose a monetary penalty on any provider that fails to publicize its cash price for COVID-19 testing on its website. *See* § 3202(b), 134 Stat. at 367.

In short, as the Ninth Circuit recognized in *Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023), section 3202 of the CARES Act does not evince congressional intent to create a cause of action for providers of COVID-19 testing to seek reimbursement from health plans in court. The district court therefore properly dismissed Murphy's claims for reimbursement under the FFCRA and CARES Act for lack of a private cause of action.

### B. ERISA

Section 502(a) of ERISA authorizes "a participant or beneficiary" of an ERISA health plan to bring a private civil action "to recover benefits due . . . under the terms of th[at] plan." 29 U.S.C. § 1132(a)(1)(B). In addition, and as relevant here, "we have carv[ed] out a narrow exception to the ERISA standing

11

requirements to grant standing to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017) (internal quotation marks omitted). But we have made clear that providers cannot bring claims against ERISA health plans pursuant to this exception "[a]bsent a *valid* assignment of a claim," "even if they have a direct stake in the outcome of the litigation." *Id.* at 148 (internal quotation marks omitted).

We have little difficulty concluding that the district court properly dismissed Murphy's ERISA claims because Murphy failed to allege that Yale Health Plan members executed a valid assignment of benefits in its favor. In its amended complaint, Murphy alleged that "[m]any of Yale's members who received testing services . . . executed assignments of benefits forms," J. App'x at 150, and attached a blank sample assignment form which reads, "I hereby assign, transfer and set over to [Murphy] sufficient monies and/or benefits to which I may be entitled . . . [and] my right to commence a lawsuit under [ERISA]," *id.* at 242. Setting aside the question of whether any Yale Health Plan members actually signed the form, it is undisputed that Yale's general plan document contains an anti-assignment provision that invalidates any assignments by its members to any

12

provider. That anti-assignment provision expressly states: "The coverage and rights described in this Booklet are personal to the member and enrolled dependents and cannot be assigned or transferred." Yale Health, *Yale Health Employee Coverage Booklet* 84 (2024), https://yalehealth.yale.edu/resource/yale-health-employee-coverage-booklet.[2] We have previously held that similarly "clear" and "definite" anti-assignment provisions in general health plans render any members' assignment of benefits to a healthcare provider "a legal nullity." *McCulloch*, 857 F.3d at 147 (internal quotation marks omitted).

Murphy offers no support for its argument that the FFCRA and CARES Act somehow override this clear and unambiguous anti-assignment provision. And while Murphy urges that such a policy would better effectuate the goals of the Acts, we will not lightly infer congressional intent to override ERISA's standing requirements, as Murphy asks us to do. Nor does Murphy assert sufficient facts to support the argument that Yale waived the clear and ambiguous anti-assignment provision through the course of its dealings. *Cf. Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 109 (2d Cir. 2008) ("Promissory or equitable estoppel

---

[2] Murphy does not dispute, on appeal or below, that the anti-assignment provision contained in the 2024 version of the Employee Coverage Booklet was the anti-assignment provision in effect during the relevant period.

13

is available on ERISA claims only in extraordinary circumstances." (internal quotation marks omitted)). In light of these determinations, we need not address the district court's separate basis for dismissal – failure to exhaust administrative remedies. Put simply, the district court properly dismissed Murphy's claims under ERISA for lack of standing.

### C. Breach of Contract

Section 514(a) of ERISA provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Through this provision, Congress preempted all state laws that "relate to" employee benefit plans in order "to establish . . . plan regulation as exclusively a federal concern." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 144 (2d Cir. 1989) (internal quotation marks omitted). We have therefore held that breach-of-contract claims seeking the recovery of benefits owed under an ERISA-covered health plan are preempted by section 514(a). *See id.* at 146. Accordingly, Murphy's state-law claims seeking reimbursement for COVID-19 tests provided pursuant to ERISA-covered Yale health plans are clearly preempted and must be dismissed.

Murphy also presses state-law claims based on non-ERISA Yale health plans. Putting aside the question whether Murphy adequately alleged distinct

14

contract claims relating to non-ERISA plans in the amended complaint, it is undisputed that there was no express contract between Murphy and Yale, and that as a third party to the benefit plan, Murphy's ability to bring a breach-of-contract claim against Yale rests on whether Murphy received a valid assignment from a Yale Health Plan member.[3]  For the reasons described above, Murphy has failed to plead a valid assignment – whether pursuant to an ERISA plan or a non-ERISA plan – in light of the blanket anti-assignment provision in Yale's plan document. Absent any reason to find that this anti-assignment provision is unenforceable, the anti-assignment provision likewise dooms its breach-of-contract claim.  The district court properly dismissed Murphy's breach of contact claim with prejudice.

D.   **Leave to Amend**

Finally, we address Murphy's argument that the district court abused its discretion when it dismissed Murphy's claims with prejudice and effectively denied it leave to amend.  Murphy did not file a motion for leave to amend below or propose a second amended complaint.  Rather, Murphy's brief in opposition to Yale's second motion to dismiss contained a catch-all request on the last page,

---

[3] Murphy challenges only the district court's dismissal of its "express contract claim," and does not raise any arguments related to a potential claim for breach of an implied contract formed between Murphy and Yale.  Murphy Br. at 43.

15

Case: 24-944, 11/25/2024, DktEntry: 49.1, Page 16 of 16
Case 3:22-cv-00033-KAD   Document 58-1   Filed 12/02/24   Page 16 of 16

seeking leave "to cure any pleading deficiencies" that the district court might identify if it granted Yale's motion. Dist. Ct. Doc. No. 49 at 19. We have previously held that where plaintiffs have similarly "failed to make formal motions to amend or to offer proposed amended complaints," there is "no abuse of discretion in the district court's implicit denial of [the] plaintiffs' cursory requests for leave to amend." *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011).

In any event, "[i]t appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 221 (2d Cir. 2006) (internal quotation marks omitted). Having correctly held that the above claims fail as a matter of law, the district court did not err in denying further leave to amend. Because "amendment would be futile," it was proper for the district court to do so. *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d at 188.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.